UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSEVIER INC., ELSEVIER B.V., ELSEVIER LTD.<br><br>          Plaintiffs,<br><br>    v.<br><br>SCI-HUB d/b/a WWW.SCI-HUB.ORG, THE LIBRARY GENESIS PROJECT d/b/a LIBGEN.ORG, ALEXANDRA ELBAKYAN, JOHN DOES 1-99,<br><br>          Defendants. | Index No. 15-cv-4282 (RWS) |

**DECLARATION OF JOSEPH V. DEMARCO IN SUPPORT OF PLAINTIFFS' APPLICATION FOR AN ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS ON DEFENDANTS AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

  I, JOSEPH V. DEMARCO, declare as follows is true and correct:

  1.  I submit this affidavit in support of Plaintiffs' application for an order authorizing alternative service of process on defendants and entry of a preliminary injunction.

  2.  I am a member of the Bar of this Court and a partner of the law firm of DeVore & DeMarco LLP, attorneys for plaintiffs Elsevier Inc., Elsevier B.V., and Elsevier Ltd. (together the "Plaintiffs" or "Elsevier") in this above-referenced matter.  My office address is 99 Park Avenue, Suite 1100, New York, New York, 10016.

  3.  Plaintiffs' application is directed toward Defendants' websites within the ".org" and ".info" top-level domains.  These top-level domains are maintained by organizations which

maintain physical offices in the United States.  Specifically, the Public Interest Registry, which is the top-level domain registry for ".org" domains, is located in Reston, Virginia, while Afilias Plc, which is the top-level domain registry for ".info" domain maintains an office in Horsham, Pennsylvania.

   4.  The ".org" top-level domain was initially created for non-profit organizations, and continues to commonly be associated with public interest and non-profit websites.

   5.  In the course of my representation of Elsevier, I have brought the unlawful activities of defendant Sci-Hub to the attention of the Public Interest Registry.  Specifically, on behalf of Elsevier, I requested that the Public Interest Registry remove www.sci-hub.org from active registration because, among other things, the site's actions violated the Public Interest Registry's Terms of Use.

   6.  Through its counsel, the Public Interest Registry informed me that it does not disable domains absent a valid court order, but would promptly comply with a valid court order to disable a domain.

   7.  According to WHOIS records, many of Defendants' websites are physically hosted by organizations in Russia, which, in my experience, are unlikely to honor orders issued from a U.S. court authorizing the seizure of Defendants' servers located there.  Moreover, Defendants have used non-U.S. privacy protection services which I do not believe will respect similar orders.

   8.  Requiring that the top-level domain registrars disable Defendants' domain names will not implicate Due Process concerns by imposing any substantial burden on the registrars because changing the IP address associated with a domain name (or, similarly, disabling the

association between a domain name and an IP address) is a regular business practice of the top-level domain registrars.

9. Through the use of Google's "Webmaster Tools," a domain registrant can use the "Change of Address" tool to redirect search traffic from one URL to another. Using this tool, Defendants would be unable to frustrate an order disabling their domain names by transitioning their content to new domains and informing Google to redirect search traffic for the disabled domain to a newly-registered domain.

10. Should this Court determine that it is required to do so, Elsevier is prepared to post a bond pursuant to Fed. R. Civ. Pro. 65(c) so as to secure a preliminary injunction against Defendants' conduct.

11. Elsevier's counsel and I have consulted with counsel in Kazakhstan and have been advised that the laws of Kazakhstan do not appear to prohibit the service of process by e-mail or by postal mail from the United States.

12. Defendants have registered their websites using proxy registrants – Fundacion Private Whois and Whois Privacy Corp. – who anonymize the websites' true owners and which require as part of their user agreements, that all correspondence directed to those owners be sent to an email listed in public WHOIS records. Attached hereto as Exhibit A is a true and correct copy of Fundacion Private Whois' Terms and Conditions. Attached hereto as Exhibit B is a true and correct copy Whois Privacy Corp's "Contact Us" page.

13. Should this Court authorize service by e-mail, Elsevier will, so as to ensure the provision of comprehensible notice to those Defendants who may be Russian-speaking, serve all Defendants copies of the Complaint, Summons, and all motions or proposed orders in both English and Russian.

I declare under penalty of perjury that the foregoing is true and correct.

Dated June 5, 2015.

 _____
 Joseph V. DeMarco