UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSEVIER INC., ELSEVIER B.V., ELSEVIER LTD. | Index No. 15-cv-4282 (RWS) |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY** |
| v. | |
| SCI-HUB d/b/a WWW.SCI-HUB.ORG, THE LIBRARY GENESIS PROJECT d/b/a LIBGEN.ORG, ALEXANDRA ELBAKYAN, JOHN DOES 1-99, | |
| Defendants. | |

Plaintiffs Elsevier Inc., Elsevier B.V., and Elsevier Ltd. (together "Plaintiffs" or "Elsevier") respectfully submit this memorandum of law in support of their Application for Leave to Take Expedited Discovery.

## I.   Introduction

As the Court is aware from proceedings to date, Elsevier is a world leading provider of professional information solutions in the Science, Medical, and Health sectors. Elsevier distributes its scientific journal articles and book chapters electronically via its proprietary subscription database "ScienceDirect."   As set forth in the Complaint, the Declarations of Joseph V. DeMarco and Paul F. Doda, and the exhibits thereto, certain unknown individuals have effected a scheme to pirate Elsevier's copyrighted scientific works by distributing those works, without authorization, on the Internet.

1

On October 28, 2015, this Court granted Plaintiffs' request for a preliminary injunction against Defendants.[1]  The Order specifically restrained the Defendants from "unlawful access to, use, reproduction, and/or distribution of Elsevier's copyrighted works and from assisting any other person or business entity in engaging in" such activities.[2]

Plaintiffs now seek expedited discovery to identify and locate the Defendants. Because most of these individuals have taken great steps in executing their unlawful scheme to conceal their true identities, Elsevier has been unable to identify and name them in its Complaint in this action.  Instead, as the Court knows, Elsevier has named "John Does 1-99."  Elsevier therefore seeks leave from the Court to conduct expedited discovery for the limited purpose of sufficiently identifying these individuals so as to be able to name and serve them as Defendants. Specifically, Elsevier seeks to obtain the IP addresses at which two of the Defendants' websites are located as well as the names, addresses, and contact information, concerning the operators of those websites from a third-party Internet service provider.  Elsevier seeks this information for the limited purposes of identifying the Defendants in this action and identifying any service providers who host Defendants' websites that are covered by the Order so that Elsevier may provide to those service providers copies of this Court's Orders.

## II.  Background

### A.  Elsevier's ScienceDirect Platform

Elsevier is a world leading provider of professional information solutions in the Science, Medical, and Health sectors.[3]  Elsevier publishes, markets, sells, and licenses academic

---

[1]      (Dkt. 53, hereinafter the "Order").
[2]      Order at 16.
[3]      Declaration of Paul F. Doda (Doda Decl.) ¶ 2.

2

textbooks, journals, and examinations in the fields of science, medicine, and health.[4]  Elsevier

distributes its scientific journal articles and book chapters electronically via its proprietary

subscription database "ScienceDirect" (www.sciencedirect.com).[5]  In most cases, Elsevier holds

the copyright and/or exclusive distribution rights to the works available through ScienceDirect.[6]

### B.  The Library Genesis Project and Its Mirrors

The Library Genesis Project operates the website "**libgen.org**," at which it hosts a

massive repository of infringing content, together with a specialized search engine which allows

its users to locate and download copies of pirated content.[7]  Elsevier has investigated the Library

Genesis Project and has verified that it does, in fact, make an array of Elsevier's copyrighted

works available for download, at no cost and without Elsevier's permission.[8]  The Library

Genesis Project claims to host approximately 1 million scientific and technical books, as well as

40 million scientific journal articles.[9]  In addition to the libgen.org website, the Library Genesis

Project's repository, or a substantial portion thereof, is or has been accessible through a number

of "mirror" websites, including "**bookfi.org**."[10]  Although following this Court's Order of

October 28, 2015, libgen.org no longer functions as a mirror site to the Library Genesis Project,

it does currently redirect to "**golibgen.io**," which does operate as such a mirror.[11]

### C.  Proceedings to Date

As noted above, Elsevier commenced this action by filing a Complaint on June 3,

2015, against a number of websites and their operators who have engaged in a sophisticated

---

[4]      *Id.*
[5]      *Id.* ¶ 5.
[6]      *Id.* ¶ 6.
[7]      *Id.* ¶¶ 7-8.
[8]      Declaration of Anthony Woltermann (Dkt. 8) ¶ 21.
[9]      *Id.* ¶¶ 19-20.
[10]     Doda Dec. ¶ 12.
[11]     *Id.* ¶ 10.

3

scheme to pirate millions of copyrighted scientific works.[12]  With the exception of a single

website Defendant, the identity of the operators of the Defendant websites were unknown to

Elsevier, and those operators were therefore named as "John Doe" Defendants.[13]

On June 11, 2015, Elsevier moved for a preliminary injunction barring the

Defendants from continuing their infringing activities and ordering that certain third party

service providers – specifically those who had provided anonymization services for Defendants'

registration of their domain names – provide records concerning the identity of the operators or

registrants of those domain names upon Elsevier's request.[14]

On October 28, 2015, this Court granted Elsevier's motion for a preliminary

injunction.[15]  In so doing, this Court ordered that "Upon the Plaintiff's request, those

organizations which have registered Defendants' domain names on behalf of Defendants shall

disclose immediately to the Plaintiffs all information in their possession concerning the identity

of the operator or registrant of such domain names."[16]  Among the Defendants subject to that

order were both the Library Genesis Project (the operator of the Libgen.org website) and

Bookfi.org.[17]

### D.  Elsevier's Attempts to Learn the Identity of the Operators of Libgen.org and Bookfi.org

Since substantially before the filing of the present action and continuing to the

present, Elsevier has used the resources at its disposal in an attempt to learn the true identity of

---

[12]     Complaint (Dkt. 1).
[13]     *Id.*
[14]     Application for an Order Authorizing Alternate Service of Process on Defendants and Order to Show Cause for Preliminary Injunction (Dkt. 5).
[15]     Opinion (Dkt. 53).
[16]     *Id.* at 16.
[17]     *Id.* at 2.

the operators of the Defendant websites, including of Libgen.org and Bookfi.org.  For many websites, contact information for the operator of the website can be found in publicly-available WHOIS records, which provide the name, physical address, and mailing address of the website operator, along with the IP address and location of the server from which the website is hosted.[18] In the case of Libgen.org and Bookfi.org, as described below, the information found in publicly-available WHOIS records did not include either the true identity or contact information of the websites' operators or the true location of the servers upon which those sites were hosted.[19]

### i.  Defendants' Use of Domain Registration Anonymization Services

For a number of reasons, a website operator may not wish that his or her name and contact information be included in publicly-available WHOIS records.  In order to serve the needs of such individuals, an industry of domain registration anonymization services has arisen. These services register the domain names of their customers as those customers' proxies.  As a result, the WHOIS records for sites registered using these services list the anonymization service, rather than the site operator, as the registrant.[20]

At all times since Elsevier has been aware of Defendants' websites, the operators of both Libgen.org and Bookfi.org have used domain registration anonymization services to mask their true identities, preventing Elsevier from identifying Defendants from that source.[21] Elsevier has also attempted to locate information concerning the true identities of the operators of Libgen.org and Bookfi.org through searches of historical domain name registration records, but no identifying information could be found.[22]

---

[18]     Declaration of Joseph V. DeMarco, (DeMarco Decl.) ¶ 4.
[19]     Doda Decl. ¶ 13.
[20]     DeMarco Decl. ¶ 5.
[21]     Doda Decl. ¶ 19.
[22]     DeMarco Decl. ¶ 6.

Following this Court's Order, Elsevier, through its counsel, requested that Whois Privacy Corp. – the domain registration anonymization service used by both Libgen.org and Bookfi.org – provide records concerning the identities of the registrants of those websites.[23] Whois Privacy Corp., however, has been entirely unresponsive to these requests, and has provided no information of any kind to Plaintiffs.[24]

### ii. Defendants' Use of CloudFlare to Mask the Location of the Servers Where Their Websites are Hosted

Elsevier has also sought to learn the identity of the operator of Defendants' websites by identifying the entities that provide the actual computer servers upon which Defendants' websites are hosted.  Once identified, these hosting companies could potentially be served subpoenas requiring them to disclose information in their possession concerning the Defendants who are their customers.  In the case of Libgen.org and Bookfi.org, however, this avenue for discovery is similarly blocked by the use of content delivery and optimization services provided by CloudFlare.[25]

CloudFlare allows websites to route their traffic – both to and from the website's server – through CloudFlare's globally-distributed network of endpoints.[26]  This process provides users of CloudFlare's services both performance and security advantages.[27]  A collateral consequence of the use of CloudFlares' services, as configured, is that the publicly-accessible WHOIS records for a website which uses CloudFlare's network as a "middle man" in

---

[23]     *Id*. ¶ 7.
[24]     *Id*. ¶ 8.  Whois Privacy Corp. appears to be located outside of the United States, and likely outside this Court's jurisdiction.
[25]     Doda Decl. ¶¶ 11, 13, 17.
[26]     *Id*. ¶ 14.
[27]     *Id.*

this manner will show CloudFlare as the "host" of the website, rather than the server which truly houses the content.[28]

Prior to the issuance of the Preliminary Injunction in this action, both Libgen.org and Bookfi.org were routed through CloudFlare's network, preventing Elsevier from learning the true IP address and server location of those sites.[29]  CloudFlare, however, would have to have been provided with certain information concerning the Defendants' websites in order to provide its service.  At minimum, Defendants' use of CloudFlare would have required Defendants to provide CloudFlare with the IP address of the true host of each website, so that CloudFlare could appropriately route Internet traffic to and from those websites.[30]  Beyond that, CloudFlare may have contact information, payment information, or other transactional information from which the Defendants may be identified.[31]

Plaintiffs' efforts to obtain identifying information concerning libgen.org and bookfi.org from CloudFlare have thus far been fruitless.  Specifically, Elsevier has attempted to obtain the IP address of the computer servers upon which Defendants' websites were hosted through CloudFlare's "Trusted Reporter" program.  The Trusted Reporter program allows certain rights holders and monitoring vendors to obtain host IP addresses for websites which infringe intellectual property rights.[32]  Elsevier participates in the Trusted Reporter program through the vendor Digimarc, which acts as Elsevier's agent for the Trusted Reporter program.[33]  Through Digimarc, Elsevier has attempted to use the Trusted Reporter program to learn the host IP addresses for Libgen.org and Bookfi.org.  However, Elsevier has been unable to obtain this

---

[28]     *See, e.g.*, *Id.* ¶¶ 11, 13.
[29]     *Id.*
[30]     *Id.* ¶ 16.
[31]     *Id.*
[32]     *Id.* ¶ 21.
[33]     *Id.*

information because CloudFlare does not provide host IP addresses for sites which are no longer active on CloudFlare's network.[34]  This policy prevented Elsevier from using the Trusted Reporter program to obtain host IP information because, pursuant to this Court's Order, both Libgen.org and Bookfi.org had been rendered non-operational.[35]  As a result, Elsevier is unable to obtain historical information concerning the operators of Libgen.org and Bookfi.org from CloudFlare through the Trusted Reporter program.

### E.  Expedited Discovery Is Necessary

As described above, the Defendants have taken numerous steps to conceal their identities.  In addition, although Elsevier has served copies of all the pleadings, motions, letters, and orders in this matter upon all the Defendants as specified in this Court's Order,[36] neither the operators of Libgen.org nor Bookfi.org have appeared in this action or responded to Elsevier or its counsel in any manner whatsoever.[37]  Moreover, despite the issuance of the Preliminary Injunction in this action barring the Defendants from continuing their infringing activity, most, if not all, of the Defendants have continued their unlawful scheme by relocating their pirate websites to new domains.[38]  Given this pattern of avoidance, Elsevier has no reason to believe that any Defendant will appear at the pretrial conference scheduled for October 24, 2016, at an initial discovery conference, or indeed at any other part of this action, thus frustrating the purpose of those proceedings.  As a result, in order to advance this action towards resolution, and to enforce the terms of the Preliminary Injunction, it is critical that Elsevier expediently obtain identifying information concerning the operators of the Defendant websites.

---

[34]    *Id*. ¶ 22.
[35]    *Id*.
[36]    Dkt. 15 (permitting service by email upon Defendants).
[37]    DeMarco Decl. ¶ 9.
[38]    *Id*. ¶ 10.

### III.  Argument

Ordinarily, parties to a federal civil lawsuit may not take discovery before the initial discovery conference.  Fed. R. Civ. Pro. 26(d)(1), (f).  However, courts, including courts in this District, will permit parties to conduct expedited discovery in advance of a Rule 26(f) conference where the moving party demonstrates that it has "good cause" for its request and the request is "reasonable" in light of the circumstances. *Ayash v. Bank Al-Madina*, 233 F.R.D.  325, 327 (S.D.N.Y. 2005) (noting that modern courts apply a "flexible 'good cause' test" in  ruling on requests for expedited discovery) (citations omitted); *see also Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, 2016 WL 2894919 at *2, No. 16-cv-2462 (S.D.N.Y. May 16, 2016) ("it is implicit [in Rule 26(d)] that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.") (quoting 8A Charls Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011)).  Courts in this district have specifically permitted expedited discovery when a Plaintiff who has established a meritorious claim would otherwise have no ability to enforce that claim.  *See, e.g.*, *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241-42 (S.D.N.Y. 2012) (finding good cause to issue a Rule 45 subpoena to ISP when the defendants could not otherwise be identified;  *Admarketplace, Inc. v. Tee Support, Inc.*, 2013 WL 4838854 at *2, No. 13-cv-5635 (S.D.N.Y. Sept. 11, 2013).

In the Second Circuit, five principal factors are considered when determining whether expedited discovery is appropriate:  "(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the

subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d. Cir. 2010) (quoting *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp.2d 556 (S.D.N.Y. 2004).

Applying these factors, this Court should grant Elsevier's application for limited, expedited third-party discovery in the form of the proposed subpoena attached to the Declaration of Joseph V. DeMarco as Exhibit B.

## A.  Elsevier Has Established a Prima Facie Claim of Actionable Harm

As demonstrated above and during the course of the proceedings in this action, the *John Doe* defendants have conducted and continue to conduct a piracy scheme on a massive scale. This Court has previously addressed this factor in its Order granting a preliminary injunction against the Defendants, finding that "Elsevier has made a substantial evidentiary showing … [that] demonstrates a likelihood of success on Elsevier's copyright infringement claims."  Order (Dkt. 53) at 6-7.  In addition, this Court also found that irreparable harm, sufficient to support a preliminary injunction was present because the harm Defendants have caused to Elsevier is unlikely to be effectively quantifiable and any monetary damages "would dramatically exceed Defendants' ability to pay."  *Id*. at 9-10.

## B.  Elsevier's Discovery Request is Narrowly Tailored to Seek Only Specific Information Concerning the Defendants

Elsevier is not seeking a broad mandate from the Court to conduct wide-ranging discovery.  Rather, Elsevier's application is a narrowly-tailored request, directed at a single service provider, and limited only to documents which may assist Elsevier in determining the identity and location of the *John Doe* defendants.  The application does not seek any evidence that goes to the merits of Elsevier's claims or that may inform an inquiry as to the magnitude of

damages, each of which would be more appropriate following the Rule 26(f) conference.  Elsevier simply wants to know who the *Doe* Defendants are and has framed  its request for discovery to determine that.

### C.  Elsevier Lacks an Alternative Reasonable Means by Which to Obtain Identifying Information Concerning the Defendants

As described above, Elsevier has used all of the tools at its disposal in its attempt to identify the operators of Libgen.org and Bookfi.org.  However, as a consequence of the Defendants' use of various service providers to anonymize their identities, as well as the non-responsiveness of those service providers to Elsevier's requests to date, these efforts have thus far been fruitless.  The domain registration anonymization services have failed to provide information pursuant to this Court's Order, and CloudFlare has not provided information through the established "Trusted Reporter" program.  As a result, Elsevier has exhausted all other reasonable options and now must now seek this Court's intervention in order to obtain identifying information concerning John Doe Defendants, or at least information which would allow it to identify the hosting provider those defendants use, from CloudFlare: a business which has had direct dealings with both Libgen.org and Bookfi.org.

### D.  Absent Identifying Information Concerning the Defendants, Elsevier Will Be Unable to Advance Its Claims

Although this action has been ongoing for more than a year, and the Defendants have been enjoined from further infringing conduct for more than ten months, the Defendants have thus far failed to appear and, with the exception of the operator of Sci-Hub.org, failed to communicate with Elsevier, its counsel, or this Court in any manner.  Rather, they have simply ignored these proceedings and adapted their infringing scheme to evade this Court's Order.

Elsevier does not expect that any of the Defendants will participate in any pre-trial conference, rendering any such conference useless.  Further, absent the ability to identify and locate the operators of Libgen.org and Bookfi.org, even if Elsevier succeeds in its claim, it will have no ability to enforce any judgment it obtains against them.

### E.  Elsevier's Interest in Advancing its Claim Supersedes Defendants' Expectation of Privacy

As demonstrated by this Court's Order requiring Defendants' domain registration anonymization providers to disclose their identities, the balance of interests between Elsevier's right to protect its intellectual property rights and Defendants' right to remain anonymous tips squarely in Elsevier's favor.  As this Court reasoned, Elsevier "continues to suffer irreparable harm due to the Defendants' making its copyrighted material available for free."[39]  Conversely, Defendants' privacy rights, if any, arise from their "right" to distribute infringing materials on the Internet anonymously.  However, such a right does not exist, as the First Amendment right to speak anonymously does not extend to unlawful activity such as that engaged in by the Defendants, because copyright infringement is not protected speech.  *Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp.2d 556, 564 (S.D.N.Y. 2004) ("a person who engages in P2P file sharing is not engaging in true expression.  Such an individual is not seeking to communicate a thought or convey an idea.  Instead, the individual's real purpose is to obtain music for free." (internal citations omitted)).  Accordingly, the First Amendment does not protect the right of file sharers to proceed anonymously.  *Id.*

---

[39]     Order at 11.

**IV.  Conclusion**

In sum, Elsevier cannot wait for the Rule 26(f) conference to begin conducting discovery, because without knowing the true identities of the Doe Defendants, Elsevier cannot effectively proceed against the operators of Libgen.org and Bookfi.org, and that conference cannot take place.  Without expedited discovery, Elsevier will be  stuck in an indefinite "holding pattern," unable to enforce its rights in court.

For the reasons set forth above and in the accompanying declarations, it is respectfully submitted that Plaintiff's Application for Leave to Take Expedited Discovery be granted.

Dated: New York, New York
        September 14, 2016

Respectfully submitted,

DEVORE & DEMARCO LLP

By:  /s/ Joseph V. DeMarco
        Joseph V. DeMarco (JD3499)
        David M. Hirschberg
        Urvashi Sen
        99 Park Avenue – Suite 1100
        New York, New York 10016
        (212) 922-9499

        *Attorneys for Plaintiff Elsevier Inc.,*
        *Elsevier B.V., and Elsevier Ltd.*