UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSEVIER INC., ELSEVIER B.V., ELSEVIER LTD.<br><br>Plaintiffs,<br><br>v.<br><br>SCI-HUB d/b/a WWW.SCI-HUB.ORG, THE LIBRARY GENESIS PROJECT d/b/a LIBGEN.ORG, ALEXANDRA ELBAKYAN, JOHN DOES 1-99,<br><br>Defendants. | Index No. 15-cv-4282 (RWS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

    A.    Procedural History............................................................................................ 2

    B.    Defendants Have Been Properly Served and Are Aware of This Action ...................... 2

    C.    Defendants Are in Default................................................................................. 3

ALLEGATIONS IN THE COMPLAINT ....................................................................... 4

ARGUMENT ...................................................................................................... 6

I.    ELSEVIER IS ENTITLED TO A DEFAULT JUDGMENT AGAINST DEFENDANTS BASED UPON THE WELL-PLEADED ALLEGATIONS WHICH ARE DEEMED ADMITTED UPON DEFENDANTS' DEFAULT ......................................................... 6

    A.    Personal Jurisdiction ....................................................................................... 6

    B.    Defendants Are Liable for Copyright Infringement............................................ 9

II.    ELSEVIER IS ENTITLED TO STATUTORY DAMAGES FOR DEFENDANTS' WILLFUL INFRINGEMENT OF ITS COPYRIGHTED WORKS ........................................... 10

    A.    Statutory Damages Under the Copyright Act ................................................ 11

    C.    Elsevier's Request for Statutory Damages is Reasonable............................... 14

    D.    An Evidentiary Hearing is Not Required to Determine Statutory Damages.................. 18

III.    DEFENDANTS SHOULD BE PERMANENTLY ENJOINED FROM FURTHER INFRINGEMENT OF ELSEVIER'S COPYRIGHTS ................................................. 19

CONCLUSION..................................................................................................... 22

**TABLE OF AUTHORITIES**

**Cases**

*Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp.2d 1 (S.D.N.Y. 2007)............ 10, 19

*Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp.3d 184 (S.D.N.Y. 2016)....... 13, 14

*Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 WL
2981912 (S.D.N.Y. Sept. 11, 2009) ............................................................................................ 6

*CJ Prod. LLC v. Your Store Online LLC*, No. 11 CIV. 9513, 2012 WL 2856068 (S.D.N.Y. July
12, 2012) ...................................................................................................................................... 15

*Columbia Pictures Indus. Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ....................................... 10

*Craigslist, Inc. v. Doe*, Case No. C09-4739 SI, 2011 WL 1897423 (N.D. Cal. Apr. 25, 2011)... 22

*Elsevier v. Kozlov*, No. 14-cv-2422, Default Judgment and Permanent Injunction, Dkt. 58 (April
13, 2015) ...................................................................................................................................... 15

*EMI April Music Inc. V. 4MM Games, LLC*, No. 12-cv-2080, 2014 WL 325933 (S.D.N.Y. Jan.
13, 2014) ...................................................................................................................................... 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991) .................................................. 9

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) ............................... 12

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218 (S.D.N.Y. 2002)........................................... 6

*Getty Images (US) v. Microsoft Corp.*, No. 14-cv-7114, 2014 WL 6633032 (S.D.N.Y. Nov. 24,
2014) .............................................................................................................................................. 9

*Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) ..................................... 7

*Hounddog Productions LLC v. Empire Film Group, Inc.* 826 F. Supp.2d 619 (S.D.N.Y. 2011)  15

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005)........... 8

*Morris v. Business Concepts, Inc*., 259 F.3d 65 (2d Cir. 2001)...................................................... 9

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250 (2d Cir. 1992) ........................ 13

*National Football League v. Primetime 24 Joint Venture*, 131 F. Supp.2d 458 (S.D.N.Y. 2001) 15

*Pearson Educ., Inc. v. Nugroho*, Case No. 08-CV-8034 (DAB) (AJP) (S.D.N.Y. Oct. 10, 2013)

    Order, ECF No. 53 ................................................................................................................... 22

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497 (2d Cir. 2011) ......................................... 8

*Phillip Morris USA, Inc. v. Otamedia, Ltd.*, 331 F.Supp. 2d 228 (S.D.N.Y. 2004) .................... 22

*Reilly v. Commerce*, No. 15-CV-05118, 2016 WL 6837895 (S.D.N.Y. Oct. 31, 2016) ............. 14

*Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 U.S. Dist. LEXIS 28332

    (E.D.N.Y. Feb. 7, 2013) ........................................................................................................ 7, 8

*Software Freedom Conservancy, Inc. v. Best Buy Co.*, No. 09-Civ10155 (SAS), 2010 WL

    2985320 (S.D.N.Y. July 27, 2010) ......................................................................................... 20

*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) ...................................................................... 7

*Starbucks Corp. v. Morgan*, No. 99 Civ. 1404, 2000 WL 949665, 2000 U.S. Dist. LEXIS 14677

    (S.D.N.Y. July 11, 2000) .......................................................................................................... 7

*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp.2d 123 (S.D.N.Y. 2003) ................................................ 13

*TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09-Civ-6215 (GBD), 2012 WL 760168 (S.D.N.Y.

    Feb. 23, 2012) ................................................................................................................... 19, 20

*Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC.*, No. 09 civ. 10343, 2010 WL

    4739938 (S.D.N.Y. Nov. 5, 2010) ........................................................................................... 9

*True Religion Apparel, Inc. v. Xiaokang Lee*, No. 11-Civ-8242 (HB) (S.D.N.Y. Mar. 12, 2012) 22

*Union of Orthodox Jewish Congregation of Am. v. Royal Food Distribs. LLC,* 665 F. Supp. 2d

    434 (S.D.N.Y. 2009) ........................................................................................................... 7, 12

**Statutes**

17 U.S.C. § 106.............................................................................................................................. 9

17 U.S.C. § 201(d)(2) .................................................................................................................... 9

17 U.S.C. § 502(a) ....................................................................................................................... 19

17 U.S.C. § 504(c)(1).................................................................................................................... 11

17 U.S.C. § 504(c)(2).................................................................................................................... 12

17 U.S.C. §§ 101, *et seq.*............................................................................................................... 1

18 U.S.C. § 1030........................................................................................................................ 1, 19

28 U.S.C. § 1331............................................................................................................................ 1

N.Y. C.P.L.R. § 302(a)(3)(i)......................................................................................................... 9

N.Y. C.P.L.R. § 302(a)(3)(ii)........................................................................................................ 7

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiffs Elsevier Inc,

Elsevier B.V., and Elsevier Ltd. (collectively "Plaintiffs" or "Elsevier") submit this

Memorandum of Law in Support of their Mortion for Default Judgment and Permanent

Injunction against Defendants Alexandra Elbakyan, Sci-Hub d/b/a www.sci-hub.org (collectively

the "Sci-Hub Defendants"), and The Library Genesis Project d/b/a Libgen.org, and the John Doe

operators of the websites Libgen.info, Elibgen.org, Estrorecollege.org, Bookfi.org, and

Bookfi.net (collectively the "LibGen Defendants"), for copyright infringement under the

Copyright Act, 17 U.S.C. §§ 101, *et seq.* and the Computer Fraud and Abuse Act ("CFAA") 18

U.S.C. § 1030.  This Court has subject matter jursisdiction over this action pursuant to 28 U.S.C.

§ 1331.

## PRELIMINARY STATEMENT

The Defendants in this action are the individuals and entities responsible for enterprises

which are responsible for the piracy of copyrighted scientific, technical, engineering, and

medical books and journal articles on an almost unfathomable scale.  Defendants' websites exist

for the sole purpose of providing unauthorized and unlawful access to the copyrighted works of

Elsevier and other scientific publishers.  Collectively, Defendants are responsible for the piracy

of millions of Elseviers' copyrighted works as well as millions of works published by others.

Despite having been served with process in this action, and Defendant Alexandra Elbakyan

having submitted letters to the Court and attended Court conferences telephonically, Defendants

have failed to respond.  Moreover, following this Court's entry of a preliminary injunction

against them, which resulted in the suspension of a number of domain names which the

Defendants had used in the course of their unlawful scheme, Defendants have continued to

operate their piracy enterprises at other domain names, in flagrant disregard of the terms of the

preliminary injunction.

1

In light of Defendants' default, Elsevier now seeks entry of a default judgment and permanent injunction against Defendants. Specifically, Elsevier seeks (1) a permanent injunction restraining Defendants from further unlawful access to, use, reproduction, and/or distribution of Elsevier's copyrighted works; and (2) $15,000,000 in statutory damages for willful infringement against Defendants.

A. Procedural History

Elsevier initiated this action against Defendants on June 3, 2015.[1] On June 11, 2015, Elsevier applied for (1) an order authorizing alternate service of process on Defendants, and (2) an Order to Show Cause for Preliminary Injunction.[2] The Court authorized alternate service of process and issued the Order to Show Cause on June 18, 2015.[3]

B. Defendants Have Been Properly Served and Are Aware of This Action

As provided for by the Court's Order authorizing alternate service of process, Plaintiffs served the Summons and Complaint in this action on all Defendants by email, and attempted to serve Defendant Elbakyan by postal mail.[4] Plaintiffs have continued to serve copies of Court Orders, letters, motions and supporting materials on Defendants by email as authorized by the Court's Order.[5]

Defendant Elbakyan, the admitted operator of Sci-Hub, has indicated her awareness of this action through (1) her participation in two teleconferences with the Court, on July 7 and July

---

[1]        Complaint, Dkt. 1.

[2]        Order to Show Cause, Dkt. 5.

[3]        Order, Dkt. 15.

[4]        Certificates of Service, Dkts. 24 – 30.  As directed by the Court's Order, service on Defendant Alexandra Elbakyan was attempted by postal mail to Zhumabaeva, 172, Almaty, Kazakhstan 050014 (Dkt. 25).  The materials mailed to that address, however, were returned unopened.  In response to counsel's inquiry, the United States Postal Service as to the status of the mailed materials, and was informed that the postal service of Kazakhstan was unable deliver the parcel as addressed.  (Decl. of David M. Hirschberg, Dkt. 79, ¶ 5).

[5]        Declaration of Joseph V. DeMarco, dated May 12, 2017 ("DeMarco Decl.") ¶ 3.

14, 2015,[6] and (2) her letter to the Court describing Sci-Hub's infringement. [7]  In addition, following the entry of the Preliminary Injunction, Elsevier requested that the top-level domain ("TLD") registry for the .org TLD take steps to render the sci-hub.org domain non-functional.[8] The TLD registry did, in fact, render the sci-hub.org domain non-functional.[9]  Subsequently, Elbakyan relocated the Sci-Hub website to a number of alternate domains, including several which remain active at the time of this filing.[10]  The execution of that provision of the Preliminary Injunction thereby provided Elbakyan reason to be aware of the progress of these proceedings.

While the LibGen Defendants have not appeared, responded to this action, or communicated with the Court or Plaintiffs in any way, Elsevier's requests to TLD registries for each of their domain names resulted in the rendering of those domain names non-functional.[11] As was the case for the Sci-Hub Defendants, the LibGen Defendants were made aware of this action through the removal of their domain names and manifested this awareness by relocating their unlawful services to alternate domains.[12]

C.  Defendants Are in Default

Defendants failed to contest Elsevier's application for a Preliminary Injunction, which the Court granted on October 30, 2015.[13]  Defendants have failed to appear or otherwise defend this

---

[6]      DeMarco Decl. ¶ 4.

[7]      Letter: Elbakyan to Court, filed September 15, 2015, Dkt. 50.

[8]      DeMarco Decl. ¶ 5.

[9]      *Id*. ¶ 6.

[10]     *Id*. ¶ 9, Declaration of Anthony Woltermann, dated May 12, 2017 ("Woltermann Decl."), ¶¶ 5, 7.

[11]     DeMarco Decl. ¶ 6.

[12]     Woltermann Decl. ¶¶ 6, 7.

[13]     Order, Dkt. 53, attached as Exhibit A to the Declaration of Paul F. Doda, dated May 15, 2017 ("Doda Decl.").

action since the entry of the Preliminary Injunction.  Accordingly, Elsevier requested that the

Clerk of Court enter a Certificate of Default against all Defendants, pursuant to Local Rule 55.1,

on February 16, 2017.[14]  The Clerk entered Defendants' default on February 16, 2017.[15]  Notice

of that default was sent to all Defendants on February 22, 2017.[16]

## ALLEGATIONS IN THE COMPLAINT

Elsevier is a world leading provider of professional information solutions in the Science,

Medical, and Health sectors and publishes, markets, sells, and licenses academic textbooks,

journals, and examinations in the fields of science, medicine, and health.[17]  Elsevier publishes a

sizable portion  of the world's peer-reviewed, full-text scientific, technical, and medical

content.[18]  The majority of Elsevier's institutional customers are universities, governmental

entities, educational institutions, and hospitals that purchase physical and electronic copies of

Elsevier's products and access to Elsevier's digital libraries.[19]  These institutional customers

include entites located in the Southern District of New York.[20]  Elsevier distributes its scientific

journal articles and book chapters electronically via its proprietary subscription database

"ScienceDirect" (www.sciencedirect.com), through which more than 15 million researchers,

health care professionals, teachers, students, and information professionals are afforded access to

approximately 2,500 different journals and more than 26,000 books.[21]  Elsevier provides access

to ScienceDirect through subscriptions it sells to its institutional customers, which permit their

---

[14]     Request for Entry of Default, Dkt. 78.

[15]     Clerk's Certificate of Default, Dkt. 80, attached as DeMarco Decl., Exhibit A.

[16]     DeMarco Decl., ¶ 10.

[17]     Complaint, ¶ 18.

[18]     *Id*. ¶ 19.

[19]     *Id*. ¶ 18.

[20]     *Id*. ¶ 27.

[21]     *Id*. ¶¶ 18, 19.  The number of books accessible through ScienceDirect has increased to approximately
33,000 since the initiation of these proceedings.  Doda Decl. ¶ 3.

employees, students, or other personnel access to the service.[22]  Elsevier maintains ScienceDirect

on a number of computer servers located around the world, including in the Southern District of

New York.[23]

The LibGen Defendants operate a number of websites through which they distribute

unauthorized copies of millions of copyrighted works in the scientific, technical, and medical

fields, including vast numbers of articles in which Elsevier owns the copyright.[24]  These websites

included, at the time of the Complaint, The Library Genesis Project's home page at libgen.org, as

well as a number of "mirror" websites through which The Library Genesis Project's repository of

pirated works could be accessed, including elibgen.org, libgen.info, lib.estrorecollege.org, and

bookfi.org.[25]

The Sci-Hub Defendants obtain access credentials belonging to individuals, such as

university students, at institutions who maintain ScienceDirect subscriptions.[26]  Using these

credentials, Sci-Hub accesses ScienceDirect and illegally downloads copies of copyrighted

works made available thereon.[27]

Sci-Hub and The Library Genesis Project work in tandem.  When a Sci-Hub user requests

an article, the Sci-Hub website first checks to see if a copy of the article is available through The

Library Genesis Project, and if so provides the user that copy.[28]  If, on the other hand, the article

is not already available through The Library Genesis Project, Sci-Hub obtains an unauthorized

copy of the article using its unauthorized access credentials and subsequently provides a copy of

---

[22]     Complaint, ¶ 20.

[23]     *Id.*

[24]     *Id.* ¶¶ 38-40.

[25]     *Id.* ¶¶ 6, 7.

[26]     *Id.* ¶ 28.

[27]     *Id.* ¶ 29.

[28]     *Id.* ¶ 32.

the article both to the user and to The Library Genesis Project repository.[29]  Elsevier has never

authorized any of the Defendants to copy or distribute any of Elsevier's copyrighted works.[30]

Defendants monetize their infringing enterprise by accepting donations or payments

through a variety of payment processors, including PayPal, Yandex, WebMoney, QiQi, and

Bitcoin.[31]

## ARGUMENT

### I.   ELSEVIER IS ENTITLED TO A DEFAULT JUDGMENT AGAINST DEFENDANTS BASED UPON THE WELL-PLEADED ALLEGATIONS WHICH ARE DEEMED ADMITTED UPON DEFENDANTS' DEFAULT

Elsevier is entitled to default judgement under Federal Rule of Civil Procedure 55

because Defendants have failed to appear or answer the Complaint.  *See Citigroup Global Mkts,*

*Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 WL 2981912, at *2 (S.D.N.Y.

Sept. 11, 2009) ("Entry of default judgment is appropriate when the adversary process has been

halted because of an essentially unresponsive party.") (internal quotations and citations omitted).

All Defendants in this matter were properly served, in the method provided in the Court's Order

authorizing alternate service, and have failed to file an answer or otherwise respond.[32]

A.  Personal Jurisdiction

Defendants' failure to answer the Complaint and the Clerk's entry of Defendants'

defaults precludes them from raising any meritorious defense to the claims asserted against them

because "[e]ntry of default constitutes an admission of well-pleaded allegations of the complaint

by the defaulted party." *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 221 (S.D.N.Y.

2002); *see also Union of Orthodox Jewish Congregation of Am. v. Royal Food Distribs. LLC,*

---

[29]      *Id*. ¶ 31.

[30]      *Id*. ¶ 39.

[31]      *Id*. ¶ 34

[32]      Clerk's Certificate of Default, Dkt. 80.

665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must 'accept [] as true all of the factual allegations of the complaint ….'") (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ("A plaintiff's factual allegations, except those relating to damages, must be accepted as true where, as here, the defendant defaults."); *Starbucks Corp. v. Morgan*, No. 99 Civ. 1404, 2000 WL 949665, 2000 U.S. Dist. LEXIS 14677, at *2 (S.D.N.Y. July 11, 2000) (factual allegations in complaint "taken as true" when defendant is in default). Accordingly, for purposes of Plaintiffs' motion for default judgment, Defendants, by their default, have conceded all well-pleaded allegations of the Complaint as described above.

The Court has personal jurisdiction over Defendants in this case. Federal courts look to the law of the forum state to determine whether a defendant is subject to personal jurisdiction. *See Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). Section 302(a)(3)(ii) of the New York CPLR provides that a court may exercise personal jurisdiction over an out-of-state defendant when he "commits a tortious act without the state causing injury to a person or property within the state … if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii).

Elsevier has alleged claims of copyright infringement, which is a tort. *See Rogers v. eColor Studio*, No. 11-CV-4493 (ARR) (RER), 2013 U.S. Dist. LEXIS 28332, at *6 (E.D.N.Y. Feb. 7, 2013) ("Copyright infringement is a commercial tort.") report and recommendation adopted by 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. Feb. 27, 2013). While we have been unable to conclusively identify the location of all of the Defendants in this action as a result of their

failure to appear and participate in Discovery, our investigation has indicated that none of the Defendants or their computer servers are likely located in the United States.  As alleged in the Complaint, Defendants appear to operate primarily in Europe, and specifically in Russia, Kazakhstan, and the Netherlands.[33]  Elsevier Inc., a company with its principal place of business in New York, is injured in New York when its copyrights are infringed via the Internet.[34]  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 501 (2d Cir. 2011).  Elsevier has also established that Defendants should have reasonably expected their cyber-piracy to have consequences in New York where Elsevier is located.  *See McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (finding it "reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York").  "This is particularly true where, as here, Defendants are found to have infringed Plaintiff's copyright knowingly and willfully."  *See Rogers*, 2013 U.S. Dist. LEXIS 28332, at *8.  Finally, as discussed below, publicly-available log data concerning the Sci-Hub service indicates that a substantial number of Sci-Hub users are physically located in New York City and that Sci-Hub, through those logs, is aware of that fact.[35]  As described above, Defendants have monetized their infringement by accepting monetary payments and donations over the Internet.  Accordingly, Defendants are subject to this Court's personal jurisdiction pursuant to New York's long-arm statute.[36]

Actions under the civil provisions of the CFAA are also tort actions.  *Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC.*, No. 09 civ. 10343, 2010 WL 4739938, at *7

---

[33]    Complaint, Dkt. 1, ¶¶ 5-9.

[34]    *Id*. ¶ 2.

[35]    Woltermann Decl. ¶¶ 9-12.

[36]    A separate Due Process analysis is unnecessary, as New York's CPLR does not extend to the limit of Due Process.  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").

(S.D.N.Y. Nov. 5, 2010) (recognizing civil actions under the CFAA as tort actions).

Accordingly, for the reasons described above, this Court also has personal jurisdiction over the

Sci-Hub Defendants relating to their CFAA violations.

This Court may also exercise personal jurisdiction over the Sci-Hub Defendants under

N.Y. C.P.L.R. § 302(a)(3)(i), which authorizes jurisdiction over a defendant who "commits a

tortious act without the state causing injury to person or property within the state … if he

regularly does or solicits business, or engages in any other persistent course of conduct … in the

state."  As described above, the Sci-Hub Defendants' actions constitute a tortious act outside the

state which causes injury to Elsevier within the state.  Moreover, an analysis of Sci-Hub's log

data indicates that Sci-Hub distributes thousands of infringing works per month to individuals

located in New York City alone.[37]

B.  Defendants Are Liable for Copyright Infringement

To prevail on its copyright claims, Elsevier must prove (1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original. The word

'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights

described in § 106." *Getty Images (US) v. Microsoft Corp.*, No. 14-cv-7114, 2014 WL 6633032,

at *2 (S.D.N.Y. Nov. 24, 2014) (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir.

2010); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).  Among

these exclusive rights are reproduction and distribution.  17 U.S.C. § 106.  For purposes of

infringement analysis, exclusive licensees are regarded as copyright owners. *See, e.g.*, *Morris v.*

*Business Concepts, Inc*., 259 F.3d 65, 70 (2d Cir. 2001), 17 U.S.C. § 201(d)(2).  In the context of

Internet-based distribution schemes, both "uploading and downloading copyrighted materials are

infringing acts.  The former violates the copyright holder's right to distribution, the latter the right to

---

[37]     Woltermann Decl. ¶ 12.

reproduction." *Columbia Pictures Indus. Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (citing 17 U.S.C. § 106(1), (3)).

Plaintiffs have alleged that they are either the owner of or the exclusive licensee of the copyrights in the vast majority of the works they distribute through their ScienceDirect platform.[38] Moreover, Elsevier has identified specific works in which it holds the copyright or exclusive distribution rights, which have been infringed by the LibGen Defendants by being copied to and distributed from their websites and by the Sci-Hub Defendants by distributing unauthorized copies to individuals located in the United States.[39] Elsevier has not assigned, licensed, or transferred the copyrights in the works in which it holds the copyright or exclusive distribution rights, to any of the Defendants, nor has it authorized any of the Defendants to copy or distribute any such works.[40] As alleged in the Complaint, Defendants have engaged in the large-scale and systematic unauthorized copying of Elsevier's copyrighted works and the subsequent unauthorized distribution of copies of those works to their users.[41]

## II.     ELSEVIER IS ENTITLED TO STATUTORY DAMAGES FOR DEFENDANTS' WILLFUL INFRINGEMENT OF ITS COPYRIGHTED WORKS

Upon establishment of liability against a defaulting defendant, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp.2d 1, 3 (S.D.N.Y. 2007). Here, Elsevier seeks a judgment of $15,000,000 against the Defendants, representing the maximum statutory damages amount of $150,000 per work for willful infringement, applied to a representative pool of 100 works infringed by the Defendants. For the reasons described below,

---

[38]     Complaint, Dkt. 1, ¶ 18.

[39]     Woltermann Decl. ¶¶ 14, 20, Exhibit B.

[40]     Complaint, Dkt. 1, ¶ 39.

[41]     *Id*. ¶¶ 29, 35-40.

the request for these amounts is reasonable, appropriate, and well supported by the purpose and goals of the statutory damages provisions of the Copyright Act.  It is appropriate for the court to award the maximum damages amount per work for willful infringement because of the intentional nature, scope and manner of Defendants' infringing activities.  At the same time, applying the maximum statutory damages amount per work to a smaller represenative pool of the overall infringements yields judgments for amounts that reasonably serves key purpose of the damages provisions of the Copyright Act:  to discourage the Defendants' infringements and deter similar infringements by others.

Elsevier has pursued these claims to obtain an injunction ordering the infringements to stop and for money damages likewise meant to discourage and deter continued infringements.  If the court determines that less than the maximum statutory amount should be applied, Elsevier requests that the Court still award an amount per work in the higher end of the statutory range, but in no event less than $30,000 per work, for these same reasons and purposes.

A.  <u>Statutory Damages Under the Copyright Act</u>

The Copyright Act provides for two ranges of statutory damages for infringement, depending on whether a defendant's infringment is willful or non-willful, with damages measured on a per-work basis.  "Statutory damages are available without proof of plaintiff's actual damages and are useful where proof of actual damages or profits is insufficient [and] serve the dual purpose of compensating the plaintiff for an injury and discouraging a defendant's wrongful conduct."  *EMI April Music Inc. V. 4MM Games, LLC*, No. 12-cv-2080, 2014 WL 325933, at *3 (S.D.N.Y. Jan. 13, 2014).  For non-willful infringement, the Act provides for damages ranging from $750 to $30,000 per infringed work.  17 U.S.C. § 504(c)(1).  Should a court find that the defendant's infringement was willful, however, the Act provides for damages

ranging up to a maximum of $150,000 per infringed work.  17 U.S.C. § 504(c)(2).  The actual amount of the award is subject to the court's discretion.  *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986).  In determining an appropriate damage award under the Copyright Act, "courts look to considerations such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) (quoting *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

Elsevier, through the allegations in its Complaint, has alleged sufficient facts to establish that Defendants have infringed Elsevier's copyrights.  Elsevier is the owner or exclusive licensee of the majority of the content it distributes through the ScienceDirect platform,[42] and owns the federally-registered copyrights in all of the works identifed in Exhibit A.[43]  Defendants have engaged in the large-scale copying and distribution of Elsevier's copyrighted works without Elsevier's authorization, including by copying and distributing the copyrighted works identified in Exhibit A.[44]  Elsevier has alleged that Defendants' actions have been willful, intentional, and purposeful, in disregard of and indifferent to Elsevier's rights.[45]  Because these facts are deemed true upon Defendants' default, the Defendants are liable for willful copyright infringement.

---

[42]     Complaint, Dkt. 1, ¶ 18.

[43]     Woltermann Decl., ¶ 20.

[44]     Complaint, Dkt. 1, ¶¶ 27-39.

[45]     *Id.* ¶ 44.

B.  Defendants Are Willful Infringers

To prove that an infringer's conduct was willful, a plaintiff must demonstrate either "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp.3d 184, 197 (S.D.N.Y. 2016) (citing *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).  Such "knowledge may be actual or constructive.  In other words, it need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (internal quotations and citation omitted), *see also Broadcast Music, Inc*., 158 F. Supp.3d at 197, "Willfulness may be inferred from a defendant's conduct, and is often found where a defendant continued the infringing behavior after receiving notice of the license requirement or directions to cease and desist." (internal citations omitted).

As noted above, Defendants have had ample notice of this action, both through service of process and by the Plaintiffs' actions which have resulted in actions taken by top-level domain registries that rendered Defendants' original websites non-functional.  This court may therefore deem Defendants' infringement willful simply on the basis of their default. *See Tiffany (NJ) Inc. v. Luban*, 282 F. Supp.2d 123, 124 (S.D.N.Y. 2003).  However, even beyond default, the record in this matter makes clear that Defendants acted willfully, because their actions and statements demonstrate that they both are aware of Elsevier's copyright rights and have consiously chosen to disregard those rights.  Following the disruption of their original domain names under the Preliminary Injunction in this matter, the Sci-Hub Defendants and several of the LibGen Defendants relocated their infringing enterprises to new domain names, largely within TLDs

outside the reach of this Court.[46]  Defendants have taken no steps to curtail their infringing

activity by removing Elsevier's copyrighted works from their services, and routinely make bold

statements regarding the scope of their infringing activities.[47]  Indeed, the Sci-Hub Defendants

have made numerous public pronouncements concerning the extent of their piracy scheme,

including in a letter to this Court in which Elbakyan admits to Sci-Hub's infringing nature.[48]

Moreover, as alleged in the Complaint, each and every one of the Defendants' websites appears

to have no substantial purpose other than to engage in and facilitate the large-scale piracy of

copyrighted works belonging to Elsevier and other publishers.[49]  These facts are certainly

sufficient to find that that the Defendants have acted wilfully.

    C.  Elsevier's Request for Statutory Damages is Reasonable

Statutory damages under the Copyright Act serve to "discourage wrongful conduct as

well as to provide reparation for injury.  A "statutory damage award should significantly exceed

the amount of unpaid license fees so as to put infringers on notice that it costs less to obey the

copyright laws than to violate them."  *Broadcast Music, Inc.*, 158 F. Supp.3d at 197-98. (internal

citations and quotations omitted).  In cases where willful conduct rises to the level of "truly

egregious" conduct, Second Circuit courts will consider the maximum statutory award of

$150,000.  *Reilly v. Commerce*, No. 15-CV-05118, 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31,

2016).  Truly egregious conduct justifying the maximum statutory award includes situations

where an infringer "continues infringing activities after being put on notice by a *court* that its

activities may constitute an infringement, or where the plaintiff shows the infringer's high

---

[46]    Woltermann Decl. ¶¶ 5, 7; DeMarco Decl. ¶ 9.

[47]    Woltermann Decl. ¶¶ 16, 17.

[48]    *Id*., Letter, Elbakyan to Court, Dkt. 50.  As this Court noted in the Order granting the Preliminary Injunction, "Elsevier's evidence is also buttressed by Elbakyan's submission, in which she frankly admits to copyright infringement."  Order, Dkt. 53, at 8.

[49]    Complaint, Dkt. 1, ¶¶ 27-40.

revenue or profit gained through infringement." *CJ Prod. LLC v. Your Store Online LLC*, No. 11

CIV. 9513, 2012 WL 2856068, at *4 (S.D.N.Y. July 12, 2012) (citing *Kepner–Tregoe, Inc. v.*

*Vroom,* 186 F.3d 283, 288–89 (2d Cir.1999)), *report and recommendation adopted*, No. 11 CIV.

9513, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012).

Notably, courts in this District have, in circumstances analogous to or less egregious than

those present here, awarded the maximum statutory damages permitted under the Copyright Act.

*See, e.g.*, *Elsevier v. Kozlov*, No. 14-cv-2422, Default Judgment and Permanent Injunction, Dkt.

58 (April 13, 2015) (award of $150,000 for each of 250 works infringed by operators of piracy

website who had notice of action and chose not to appear); *Hounddog Productions LLC v.*

*Empire Film Group, Inc.* 826 F. Supp.2d 619, 631 (S.D.N.Y. 2011) (maximum statutory

damages appropriate where defendant continued to distribute work after receiving notice that it

no longer had distribution rights); *National Football League v. Primetime 24 Joint Venture*, 131

F. Supp.2d 458, 479-80 (S.D.N.Y. 2001) (awarding *then*-maximum statutory damages of

$100,000 per infringed work where defendant broadcaster was "knowing or at least reckless" in

its infringement of the NFL's copyrights);

Here, Defendants' willful conduct rises to the level of truly egregious conduct, justifying

the maximum statutory damages of $150,000 per infringed work.[50] The Preliminary Injunction

constituted such notice by a court, and Defendants have flagrantly disregarded the Preliminary

Injunction by continuing to operate their piracy enterprises.  Moreover, Elbakyan has publicly

stated that she is aware that Sci-Hub's actions are unlawful and that this Court has enjoined her

---

[50]     Elsevier requests statutory damages relating only to 100 identified infringed works, rather than the millions
of Elsevier's copyrighted works which Defendants have infringed.  Elsevier does to in an effort to obtain an award
that serves a sufficient deterrent function while not requesting this Court reach an absurd result.  *Arista Records LLC*
*v. Lime Group LLC*, 784 F. Supp.2d 313, 317 (S.D.N.Y. 2011) (noting that strict multiplication of maximum
statutory damages by the number of infringed works could result in awards measured in the billions or trillions of
dollars, which would be an absurd result the Court could not endorse).

infringing activities, *but that she intends to continue to defy the Court's Order.*[51]  The LibGen

Defendants were also served with the Preliminary Injunction and have continued their infringing

activities even after the suspension of their original domains.[52]  Finally, through their statements

and their conduct, Defendants have made clear that they have at all times been aware that their

conduct constitutes Copyright Infringement and that their services have been designed solely to

pursue that unlawful end.

   Here, the scale of Defendants' infringement is so staggering that a reasonable estimate of

appropriate damages, even if based on a lower, license- fee-based metric, would be difficult, if

not impossible, to calculate.  As alleged in the Complaint, the LibGen Defendants, at the time of

the Complaint, hosted more than 40 million scientific works, the large majority of which are

subject to copyright protection.[53]  Since The Library Genesis Project's repository has been

augmented by Sci-Hub's continuing piracy of new works, it is evident that his number has

substantially increased since that time.  At the time of the Complaint, LibGen had obtained such

a high portion of the copyrighted materials available on ScienceDirect that Elsevier's

investigation found it difficult to locate a ScienceDirect-hosted article which was *not* illegally

available through The Library Genesis Project's repository.[54]  Elsevier's analysis  of the

bibliographic database detailing the contents of The Library Genesis Project's repository as of

March 17, 2015, revealed that it contained more than 29,000 Elsevier imprint book titles and

approximately 12 million articles associated with Elsevier branding.[55]  Since the vast majority of

---

[51]     Woltermann Decl. ¶ 16.

[52]     *Id.* ¶ 7.

[53]     Complaint, Dkt. 1, ¶ 30.

[54]     Declaration of A. Woltermann in support of Plaintiff's Application for an Order Authorizing Alternative Service of Process on Defendants and for Preliminary Injunction, Dkt. 8, ¶ 21.

[55]     *Id*. ¶¶ 22 - 23.

the Elsevier content on ScienceDirect requires a license for access, the resulting statutory

damages appropriate in this case would quickly reach astronomical heights.  To avoid this result,

Elsevier is not seeking an award based on license fees for the millions of Elsevier's copyrighted

works which Defendants have infringed.  Rather, Elsevier seeks statutory damages in amounts

that serve the statutory purposes of such damages to discourage and deter infringement by

limiting its request to a representative sampling of one hundred infringed works, listed in Exhibit

A.  Elsevier has verified that each of the works listed in Exhibit A is subject to Elsevier's

federally-registered copyright and available for download from The Library Genesis Project.[56]

Sci-Hub does not itself host the articles it provides to its users.  Based on the public

statements of Alexandra Elbakyan, Sci-Hub's admitted operator, however, we can gain some

appreciation of the enormity of Sci-Hub's infringing reproductions and distribution activities.

Sci-Hub's profile on vk.com currently claims that Sci-Hub provides access to more than 60

million peer-reviewed scientific articles.[57]  In addition, while Sci-Hub has not participated in this

action, frustrating Elseviers' ability to seek discovery as to the scale of its infringement and the

identities of the infringed works, Elbakyan has been substantially more forthcoming in other

arenas.  Notably, however, in connection with an article about Sci-Hub published in the journal

*Science*, Elbakyan provided not only substantial admissions as to how Sci-Hub operates, but also

raw data regarding Sci-Hub's traffic.  This data, which has also been published and made

publicly available, indicates that in the period between September, 2015, and February, 2016 (a

period which includes four months after the entry of the Preliminary Injunction in this case), Sci-

Hub served approximately 28 million documents to its users.[58]  As noted in the Complaint,

---

[56]     Woltermann Decl. ¶¶ 19-21.

[57]     *Id*. ¶ 17.

[58]     *Id.* ¶ 12.

Elsevier publishes a substantial portion of all peer-reviewed scientific journal content.[59]  Again, assuming that almost all of the content that Elsevier provides on ScienceDirect requires a license to access, a request for statutory damages as to each of these works would result in an enormous statutory damages figure.

That sum, of course, would only relate to Sci-Hub's activity during a single six-month period.  The actual amount would be much larger.

Rather than engage in this form of estimation, however, Elsevier has limited its request for statutory damages against the Sci-Hub Defendants to one hundred representative  works, identified in Exhibit A.[60]  The Sci-Hub log files provided to *Science* included the DOIs of each article downloaded and the geolocation of the recipient of each article.[61]  Parsing that data reveals approximately 74,000 works which were downloaded by individuals in New York City alone.[62]  Elsevier has identified one hundred specific works (1) which were admittedly served by Sci-Hub to its users, (2) in which Elsevier holds the federally-registered copyright, and (3) which are also available through The Library Genesis Project.[63]  By awarding Elsevier the maximum statutory damages for willful copyright infringement for each of these one hundred works (*i.e.*, $15,000,000 in aggregate), this Court can provide a substantial award which serves to discourage and deter future infringement.

D.  An Evidentiary Hearing is Not Required to Determine Statutory Damages

In the Second Circuit, the Court is not required to hold an evidentiary hearing on the issue of damages in the context of default judgement "as long as it ensured that there [is] a basis

---

[59]     Complaint, Dkt. 1, ¶ 19.

[60]     Digital Object Identifier – a unique identification code which specifies a particular publication.

[61]     Woltermann Decl. ¶ 11.

[62]     *Id*. ¶ 12.

[63]     *Id*. ¶¶ 14, 19-20.

for the damages specified in the default judgment." *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp.2d 1, 4 (S.D.N.Y. 2007) (quoting *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Rather, "a district court may rely on detailed affidavits and documentary evidence supplemented by the District Judge's personal knowledge of the record." *Id.* (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (finding it unnecessary to hold a post-default evidentiary hearing where the court could rely on affidavits and documentary evidence). Therefore, based on the Plaintiffs' filings in this application and throughout the course of this litigation, an evidentiary hearing on the issue of awarding statutory damages is not necessary.

## III. DEFENDANTS SHOULD BE PERMANENTLY ENJOINED FROM FURTHER INFRINGEMENT OF ELSEVIER'S COPYRIGHTS

"A court may issue an injunction when the moving party establishes that there is a statutory basis for relief and that it meets the prerequisites for the issuance of an injunction. The second of these conditions requires that a party seeking an injunction demonstrate irreparable harm and the absence of an adequate remedy at law." *TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09-Civ-6215 (GBD), 2012 WL 760168, at *7 (S.D.N.Y. Feb. 23, 2012) (internal quotations and citation omitted). "In intellectual property actions, such permanent injunctions generally are granted when there is a threat of continuing violations." *Id.* (internal quotations and citation omitted).

The first requirement is met because both the Copyright Act and the CFAA authorize injunctive relief. Section 502 of the Copyright Act provides a Court the ability to provide injuncive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The CFAA likewise permits a civil plaintiff to seek injunctive relief. 18 U.S.C. § 1030(g). The second requirement is also satisfied because Elsevier, as the

19

result of Defendants' infringement, has been injured and will continue to suffer an injury for which there is no adequate remedy at law.  Defendants, by their relocation of their unlawful enterprises to new domain names in defiance of the preliminary injunction in this case, have clearly demonstrated their intention to continue to infringe.  The manifestation of this intent warrants entry of a permanent injunction.  *See TigerCandy Arts,* 2012 WL 1948816, at *8 (permanent injunction warranted where defendants defaulted and evinced intention of continuing their infringing activity after plaintiffs' cease-and-desist demands); *Software Freedom Conservancy, Inc. v. Best Buy Co.*, No. 09-Civ10155 (SAS), 2010 WL 2985320, at *3 (S.D.N.Y. July 27, 2010) (permanent injunction granted where defendants' conduct continued even after being informed that it was infringing).  Defendants' response was not to cease their infringing activities, but rather to simply relocate their enterprises to domain names within TLDs outside the reach of United States courts.[64]  These actions are clearly designed to allow Defendants to continue their infringing activities while simultaneously frustrating the Court's ability to provide Elsevier meaningful recourse.

The public interest would also be served by the proposed injunction.  In issuing the Preliminary Injunction, this Court expressly addressed the balance of interests at play in this matter, noting that in light of the competing public interests between the rights of copyright owners and the rights of users, "Elbakyan's solution to the problems she identifies, simply making copyrighted content available for free via a foreign website, disserves the public interest."[65]  In fact, the Defendants' activities harm the public interest by creating an atmosphere where publishers, authors, and scentists are all harmed.  Defendants' piracy reduces the economic incentives of publishers' to invest not only in new pulbications, but also from

---

[64]     DeMarco Decl. ¶ 9.

[65]     Order, Dkt. 53, at 14.

developing new and innovative tools through which scientific knowledge can be better disseminated.[66]  Defendants' scheme harms authors of scientific books, who rely on royalty payments to earn a living or supplement their income.[67]  Finally, Defendants' archives harm scientists who may rely on the pirated materials, unaware of potentially critical revisions or retractions.[68]

 In light of Defendants' ongoing, flagrant infringement, their location in other countries, and their nearly complete disregard for this lawsuit, Elsevier is aware that it is quite likely that the Defendants will not comply with the requested permanent injunction just as they have ignored the Preliminary Injunction.  Nevertheless, Elsevier requests injuctive relief not only to enjoin Defendants from further infringement, but also to make permanent the provisions of the Preliminary Injunction relating to suspension of Defendants' domain names by ordering those domain names' transfer to Elsevier's ownership.

 The reasons for the injunction transferring Defendants' domain names are compelling. Defendants' enterprises exist for the sole purpose of infringement and Defendants have demonstrated their intent to continue infringing despite their knowledge of this lawsuit and the unlawfulness of their actions.  It is appropriate to require the surrender of the domain names used for their unlawful activities. At present, it also is perhaps one of the only remedies practically available to Elsevier and a surrender ensures that such domains administered within the US will no longer be used for illegal infringing activities.

 An injunction requiring the transfer of the domain names associated with the infringing sites is appropriate where, as here, Defendants are likely to continue their unlawful conduct. *See*

---

[66] Doda Decl. ¶ 13.

[67] *Id*. ¶ 14.

[68] *Id*. ¶ 15.

*Craigslist, Inc. v. Doe*, Case No. C09-4739 SI, 2011 WL 1897423, at *12 (N.D. Cal. Apr. 25, 2011) ("Based on the likelihood that [defendant] will continue his unlawful conduct, I … recommend that [plaintiff's] request for the transfer of [defendant's] websites … be granted."), report and recommendation adopted by 2011 WL 1884555, 2011 U.S. Dist. LEXIS 53204 (N.D. Cal. May 18, 2011).  Courts in this district have granted similar injunctive relief against infringers. *See, e.g., Phillip Morris USA, Inc. v. Otamedia, Ltd.*, 331 F.Supp. 2d 228, 247 (S.D.N.Y. 2004) (modifying injunction and ordering that defendant's domain names be transferred to plaintiff); *True Religion Apparel, Inc. v. Xiaokang Lee*, No. 11-Civ-8242 (HB) (S.D.N.Y. Mar. 12, 2012), (issuing default judgment and permanent injunction ordering transfer of defendant's domain names); *Pearson Educ., Inc. v. Nugroho*, Case No. 08-CV-8034 (DAB) (AJP) (S.D.N.Y. Oct. 10, 2013) Order, ECF No. 53, (modifying permanent injunction to order transfer of defendant's domain names).  Taken as a whole, all of the factors weigh in favor of the permanent injunction Elsevier requests.

## CONCLUSION

The mass infringement of Elsevier's copyrighted works by both the Sci-Hub Defendants and the LibGen Defendants has cause and will continue to cause irreparable harm to Elsevier. Despite being made aware of this litigation and the Preliminary Injunction against their infringing activities, Defendants have persisted in their unlawful course of conduct and nearly entirely ignored these proceedings.  Elsevier therefore respectfully requests that the Court enter default judgement (1) awarding statutory damages of up to $15,000,000 against the Defendants, (2) permanently enjoining Defendants from infringing Elseviers copyrights, and (3) ordering the transfer of Defendants' domain names listed in Exhibit B to Elsevier's ownership.

Dated: New York, New York

May 16, 2017

DEVORE & DEMARCO LLP

By: /s/ Joseph V. DeMarco
     Joseph V. DeMarco (JD3499)
     David M. Hirschberg
     99 Park Avenue – Suite 1100
     New York, New York 10016
     (212) 922-9499
     jvd@devoredemarco.com

*Attorneys for Platintiffs Elsevier Inc., Elsevier B.V., and Elsevier Ltd.*

23