UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELSEVIER INC., ELSEVIER B.V., ELSEVIER LTD.

                    Plaintiffs,

v.

SCI-HUB d/b/a WWW.SCI-HUB.ORG, THE LIBRARY GENESIS PROJECT d/b/a LIBGEN.ORG, ALEXANDRA ELBAKYAN, JOHN DOES 1-99,

                    Defendants.

Index No. 15-cv-4282 (RWS)

---

## DECLARATION OF PAUL F. DODA IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

I, PAUL F. DODA, declare as follows is true and correct:

1.      I submit this declaration in support of Plaintiffs' motion for default judgment and permanent injunction against the Defendants in the above-captioned matter.

2.      I am Global Litigation Counsel at Elsevier Inc. (together with Elsevier B.V. and Elsevier Ltd, the "Plaintiffs" or "Elsevier"). In that capacity, I am responsible for and familiar with Elsevier's copyright enforcement matters, including its investigation of and responses to online piracy and content theft. My office is located at 230 Park Avenue, New York, New York 10169.  I have been employed by Elsevier since 2007, and have been a lawyer within the wider RELX Group of companies (f/k/a Reed Elsevier) since 2001.

### A.  Elsevier's ScienceDirect Platform

3.        Elsevier publishes more than 2,500 scholarly journals and approximately 365,000 articles annually in those journals. Elsevier is also a leading publisher of scholarly books, publishing approximately 33,000 books.  Elsevier operates the "ScienceDirect" online platform, through which users can access Elsevier's journals and book content.  There are over 12 million scientific journal articles and 33,000 books accessible from ScienceDirect.

### B.  Defendants' Continuing Unlawful Distribution of Elsevier Content

4.        Defendant Library Genesis Project is an illegal online repository of copyrighted works, including scientific articles and book chapters illegally obtained from ScienceDirect. The Library Genesis Project repository is also accessed through a number of "mirror" websites, including Bookfi.org. At the time this suit was filed, the Library Genesis Project maintained websites reachable at a number of Internet addresses, including at the URL's "libgen.org." and "Bookfi.org."

5.        I understand that several of The Library Genesis Project's original domain names and those of its mirrors – including libgen.org, libgen.info, elibgen.org, bookfi.org, and estrorecollege.org – no longer direct to active websites.

6.        I understand, however, that The Library Genesis Project has continued to operate its infringing service through several other domains, as have its mirrors, including **libgen.io and bookfi.net.**

7.        The Sci-Hub Defendants operate a service which enables its users to unlawfully obtain copyrighted scientific works from a number of publisher databases, including ScienceDirect. At the time this suit was filed, Sci-Hub's website was located at the domain sci-hub.org.  The Sci-Hub Defendants obtain access credentials belonging to individuals, such as

university students, at institutions who maintain ScienceDirect subscriptions. Using these credentials, Sci-Hub accesses ScienceDirect and illegally downloads copies of copyrighted works made available thereon.

8.     Sci-Hub's original domain name – www.sci-hub.org – does not currently direct to an active website, nor has it since approximately November, 2015.

9.     The Sci-Hub website has, however, since November, 2015, continued to operate at a number of new domains, which include **sci-hub.ac, sci-hub.bz, sci-hub.cc, and sci-hub.io.**

10.     Elsevier has not at any time authorized the Library Genesis Project, Sci-Hub, or Defendant Alexandra Elbakyan to distribute any of Elsevier's copyrighted works through any channel, including through the libgen.io, sci-hub.ac, sci-hub.bz, sci-hub.cc, and sci-hub.io websites.

## C.  The Public Harm Caused by Defendants

11.     Defendants' ongoing contempt of this Court's October 28, 2015 Opinion and Order ("Order"), which is attached hereto as Exhibit A, and circumvention of the Order through the adoption of new domain names, means that Defendants continue to irreparably harm science publishers and the scientific publishing ecosystem on which universities, faculty, students, researchers, authors, professionals, and the public depend.

12.     Defendants' illegal activities harm the communities whose interests they purport to serve.  As this Court's Order observed, the harm from the massive infringement of publishers' copyrights ultimately harms the public interest in the creation of, and access to, scientific research: "simply making copyrighted content available for free…disserves the public interest….[T]here is a 'delicate ecosystem which supports scientific research worldwide'... and copyright law plays a critical function within that system. 'Inadequate protections for copyright

owners can threaten the very store of knowledge to be accessed; encouraging the production of creative work ultimately serves the public interest in promoting the accessibility of such works'." Order, p. 14.

13.     Defendants' purported goal to serve the public interest by providing free access to scientific articles and books ignores the fact that publishers make significant investments, not only in new publications and new areas of study, but also in the development of innovative tools that allow for the most advantageous use of their publications and the data therein.  Publishers must recoup costs and earn profits to sustain and continue these activities that benefit the science and research community.

14.     Defendants' massive infringement scheme includes the piracy of millions of books. Thus, in addition to the harm caused to commercial science publishers large and small, and to non-profit scholarly societies whose publishing activities fund programs for scholars and scientists, there are thousands of authors who are harmed that rely on royalties to earn a living or supplement their income.

15.     Beyond the harm to the direct participants in the scientific publishing ecosystem, Defendants' illegal infringing activities continue to pose a threat to the public record of science and therefore to the public at large.  As detailed in my prior Declaration, dated May 6, 2015, the integrity of an accurate scientific record, and the attendant public health benefits therefrom, is an important public policy goal of the U.S. Department of Health and Human Services.  Defendants' ongoing maintenance and proliferation of an alternative scientific record that exists outside established industry-wide standards for retractions and corrections of articles presents a public health and safety issue. While responsible professional science publishers warn readers about errors, and implement corrections and retractions according to the industry

standards, Defendants' fail to do the same and thereby present an avoidable risk to doctors and

researchers who might unwittingly rely on bad science.


I declare under penalty of perjury that the foregoing is true and correct.

Dated May 15, 2017.

Paul F. Doda